Mary R. HADDEN *v.* Charles HADDEN

94-1319                                    897 S.W.2d 568

Supreme Court of Arkansas
Opinion delivered May 15, 1995
[Rehearing denied June 19, 1995.]

*Roachell & Street*, by: *Richard W. Roachell*, for appellant.

*Appellee*, pro se.

DAVID NEWBERN, Justice. Charles Hadden, the appellee, brought an action for divorce against Mary R. Hadden, the appellant, in 1992. Mrs. Hadden contested the divorce and counterclaimed for separate maintenance. Both parties' claims were denied because the Chancellor found each at fault and applied the doctrine of recrimination. The Chancellor entered support orders against Mr. Hadden in favor of Mrs. Hadden and the parties' minor daughter. Mr. Hadden later filed a second divorce complaint alleging 18 months separation, and the divorce was granted. The latter order divided the parties' marital property and awarded alimony to Mrs. Hadden and support for the minor daughter. Mrs. Hadden contends there was error in the division of the parties' property and in failure to award support of an adult daughter. Because the Chancellor erroneously declined to divide a particular marital asset without adequate explanation, we must reverse and remand the case.

Mrs. Hadden contends the Chancellor erred by declaring in the divorce decree that the earlier proceeding "resulted in an Order . . . which in effect granted the Defendant a divorce from bed and board; [and] that all property and property rights accruing to or purchased by each of the parties since January 21, 1993,

are now found to be non-marital property . . . ." In particular, she contends she should have received half of the money Mr. Hadden spent prior to the divorce on attorney's fees as well as half of money he withdrew from a checking account to spend on their adult daughter's college expenses when they separated in 1992.

### 1. The support order

In *Mason* v. *Mason*, 248 Ark. 1177, 455 S.W.2d 851 (1970), a divorce decree was denied by the Chancellor due to failure of the plaintiff to present corroboration of grounds. The Chancellor nonetheless retained jurisdiction to enter a support order in favor of Mrs. Mason and held Mr. Mason in contempt for violation of it. We affirmed, citing *Crews* v. *Crews*, 68 Ark. 158, 56 S.W. 778 (1900), in which a divorce from bed and board was awarded in favor of the wife although absolute divorce was denied because both parties were at fault, with the wife being somewhat less at fault than the husband. Our opinion in the *Mason* case stated the Chancellor had, despite the lack of corroboration of grounds, "in effect" granted a divorce from bed and board, and we implied that was proper in the circumstances.

It is very important to note that in the *Mason* case there was no finding of a failure to show a ground for divorce or application of a defense, such as recrimination. There was only a failure of corroboration, and the complaint was not dismissed by the Chancellor. The support order entered was much the same as a temporary order of support which may be entered in a pending divorce action. *See* Ark. Code Ann. § 9-12-309 (Repl. 1993); *Womack* v. *Womack*, 247 Ark. 1130, 449 S.W.2d 399 (1970).

From the perspective of hindsight, and in view of our current marital property laws, it would have been far better had we, in the *Mason* case, alluded to maintenance *pendente lite* rather than divorce from bed and board. The difficulty in the case now before us is created by the fact that our current law provides that property acquired by a spouse after a divorce from bed and board is not marital property. Ark. Code Ann. § 9-12-315(b)(3) (Repl. 1993). When a chancellor declines to award a divorce and enters nothing more than a support order necessitated by a family breakup, there is no divorce from bed and board, and there is no basis for holding that property acquired by the parties there-

after is other than marital property unless it falls within some other exception found in § 9-12-315.

■ As a general proposition, we agree with Mrs. Hadden's argument that, to the extent the Chancellor may have divided marital property as of the date the first divorce complaint was denied, it was error to do so. The marital property should have been divided and distributed at the time the divorce decree was entered as provided in Ark. Code Ann. § 9-12-315(a). The remaining question is whether Mrs. Hadden has demonstrated any prejudice as the result of the error, absent which we will not reverse. *Young* v. *Young*, 288 Ark. 33, 701 S.W.2d 369 (1986). She contends the Chancellor improperly failed to distribute her share of $3,356.07 taken by Mr. Hadden from a checking account as well as money he spent on attorney's fees during their separation and prior to the entry of the divorce decree.

## 2. *The $3,356.07*

In the divorce decree, the Chancellor stated:

> . . . the Court finds that the plaintiff [Mr. Hadden] had, at the time of his separation, cash in his checking account in the approximate amount of $3,600 which the Court declines to divide as of the date of separation because the plaintiff used the money to pay for . . . [the parties' adult daughter's] educational needs.

Mrs. Hadden contends she was entitled to half of that money in accordance with § 9-12-315 unless such a division was found to be inequitable by the Chancellor. She says the reason given by the Chancellor was inadequate. Mr. Hadden argues the Chancellor was only doing equity as contemplated by the statute.

■ Assuming, as do the parties, that the money in question was available as a marital asset to be divided upon entry of the divorce, the Chancellor erred in declining to grant an equal division of it without adequate explanation. Section 9-12-315(a) provides for distribution of one-half of marital property to each party unless the court finds such a division to be inequitable. It then lists nine factors to be taken into consideration if the division is to be other than equal. Subsection (b) requires the court to state its reasons in the order if an unequal division is declared.

Support of an adult, college student daughter does not fall directly within any of the nine items listed in the statute to be considered in reaching an unequal distribution of a marital asset. The Chancellor's reason for declining to divide the money spent by Mr. Hadden on the parties' adult daughter's college expenses was inadequate. As we discuss below, Mr. Hadden had no obligation to support his adult daughter, thus the payment of her college expenses does not constitute a sufficient reason for refusal to divide the money. We, therefore, must reverse and remand the case to the Chancellor for reconsideration of that part of the decree.

### 3. Attorney's fee expenses

Mrs. Hadden argues that any money spent by Mr. Hadden on legal counsel for the divorce should be divided and one-half of the amount should be awarded to her. Implicit in this argument is the conclusion that the funds, if any, spent by Mr. Hadden on the procurement of counsel, were marital funds. It should be noted that the Chancellor made no finding that marital funds were used for this purpose; nor is there any evidence in the abstract or the record that Mr. Hadden used marital funds to pay attorney's fees.

It is the appellant's burden to produce a record exhibiting prejudicial error. *See Smith* v. *Babin*, 317 Ark. 1, 875 S.W.2d 500 (1994); *Haynes* v. *State*, 314 Ark. 354, 862 S.W.2d 275 (1993). As there is no evidence in the record nor was there a finding to support any allegation that marital property was involved in the payment of Mr. Hadden's legal fees, we decline to reverse on this point.

### 4. Support for adult daughter

Although conceding that a parent usually has no legal obligation to support a child over the age of majority, Mrs. Hadden submits that the Chancellor should have ordered support for the parties' adult daughter because the evidence showed she suffered from clinical depression at the time she reached the age of majority. The daughter turned 18 in 1988, some four years before the parties separated.

Mrs. Hadden presented the testimony of a psychologist who said the daughter's depression problem originated during her

childhood. No evidence was presented, however, to show that treatment was sought prior to 1992. The Chancellor stated in the decree that Mr. Hadden would not be required to provide the support requested because the daughter "did not have special needs justifying . . . [Mrs. Hadden's] claim for support at the time she reached the age of majority."

■ The general rule is that once a child reaches majority and is not physically or mentally disabled, the legal duty of the parents to support that child ceases. *Towery* v. *Towery*, 285 Ark 113, 685 S.W.2d 155 (1985); *Hogue* v. *Hogue*, 262 Ark. 767, 561 S.W.2d 299 (1978). The law imposes no duty of support if the child becomes disabled at a later time.

Given the Chancellor's factual conclusion that the daughter in question had no special need when she reached the age of adulthood, we cannot disagree with the legal conclusion that Mr. Hadden had no duty to support her.

Reversed and remanded.